Aguilar was indicted on four counts of indecency with a child by contact against Sonia in 2014, and one count of continuous sexual abuse against Sonia and Teresa during the period from November 17, 2007 through June 17, 2013. See TEX. PENAL CODE ANN . §§ 21.11(a)(1), 21.02 (West 2011 & Supp. 2016). At trial, Samantha testified to the outcry statements by Sonia and Teresa that Aguilar would make them sleep with him at night and would engage in various acts of sexual contact with them. Sonia and Teresa testified similarly. Aguilar testified and proclaimed his innocence. He presented evidence that at least one of the counselors who examined the girls was initially "unable to determine" whether they had been sexually abused. No physical or medical evidence of sexual abuse was admitted. The jury found Aguilar guilty on all counts, except Count I which was abandoned by the State prior to trial. He was sentenced to eighty years of imprisonment on the continuous sexual abuse count and twenty years of imprisonment on each count of indecency, with the sentences to run concurrently.
BIASED JUROR
In his first three issues, Aguilar asserts he was denied his state and federal constitutional rights to a fair and impartial *258 jury because a biased juror served on his jury. The State responds that Aguilar failed to preserve any error when he declined to pursue an objection to the juror's continued service after the juror was questioned at the bench about any potential bias.
Jury selection took place on April 25, 2016 before Associate Judge Melissa Joy Garcia. J.S. was sworn in as one of the jurors. Trial began two days later on April 27, 2016 before District Judge Oscar J. Hale, Jr. Before opening statements began, defense counsel informed the trial court and prosecutor on the record that he learned that J.S. had posted a comment about the trial on Facebook after being selected to the jury. Defense counsel expressed his concern that the post indicated a "gender bias in favor of women" and argued it was significant because the victims were two young girls and the prosecutor was a woman. The post read as follows:
Just yesterday I wrote a paper on Women in Leadership & had to explain why we are underrepresented. Ironically I had jury duty today & who is the judge? Melissa Joy and prosecutor Linda G ... Then I get selected to serve on a trial beginning on Wed ... Happy B-Day to me. Guess I'll be spending it with strangers.
The post was accompanied by a photograph of J.S.'s juror identification card. J.S. also commented on her own post, stating, "Louie, I forgot to mention we were in Monica's courtroom. Imagine that Women in power ... I love it!"
Judge Hale read the post and stated that "gender bias is one thing," but promoting "women [in] power" is another, noting that unequal pay for women is currently "a hot topic on the national level." The judge stated he would allow counsel to question J.S. under oath on the record, but also stated, "unless you're going to show us something else that she said specifically about how she's biased against men," then "I really don't see anything on this."
J.S. was brought into the courtroom and placed under oath. After defense counsel obtained her confirmation that she wrote the Facebook post and comment, he posed the following question, "after hearing all the evidence, the judge is going to give you an instruction to set aside your personal feelings, to set aside your bias, bias for women against men. And my feeling is that, from your position, you are unable to do that. Is that true?" Before she could reply, the trial court interrupted, stating that defense counsel had not established anything yet and the question was based on assumptions; the court instructed counsel to rephrase the question. After another question by defense counsel asking whether the juror "would be able to put your biases aside," the trial court again interrupted and took over the questioning. The court asked, "Do you have a bias against men?" and J.S. replied, "Negative. No. Not at all. I'm just very proud of these girls. They've gone a long way." In response to the court's follow-up question, "Do you have a bias against the defendant, more specifically," she answered, "No, sir, no." The trial court asked two more questions about whether J.S. could judge the credibility of the witnesses' testimony equally, "whether they were male or female, or the defendant or the victim," and she confirmed that she could do so. At that point, the court asked defense counsel whether he had any other questions, and counsel stated, "No further questions." J.S. left the courtroom and defense counsel stated, "Thank you, your Honor" and requested that the Facebook posting, marked as Defendant's Exhibit 1, be included in the record. When the court inquired, "Anything else?" defense counsel moved on to *259 another matter involving a motion in limine by the State.
The record reflects that at no time did counsel for Aguilar raise any further objection to J.S. serving on the jury, move to have her excused and replaced by the alternate, or move for a mistrial. In his reply brief, Aguilar asserts that his counsel made "an objection through context" and that it was apparent to the trial court that counsel objected to the continued jury service of J.S. The context of the exchange on the record, as set forth above, does not support Aguilar's assertion that the issue was preserved. The record shows that the trial court inquired into any potential bias by J.S., her answers did not show a bias, and defense counsel did not express any objection to her continued jury service, or request a substitution or any other relief, after the questioning. Therefore, Aguilar waived any error with respect to any bias by J.S. See TEX. R. APP. P . 33.1(a).
Aguilar mistakenly argues in his reply brief that the right to an impartial jury cannot be waived by a defendant. The Court of Criminal Appeals has expressly held that "the right to trial by impartial jury, like any other right, is subject to waiver (or even forfeiture) by the defendant in the interest of overall trial strategy." State v. Morales , 253 S.W.3d 686, 697 (Tex. Crim. App. 2008) (also stating the right to an impartial jury is "not to be regarded ... within the rubric of Marin v. State [851 S.W.2d 275 (Tex. Crim. App. 1993) ], as a fundamental feature of the system which is not optional with the parties" as it "is a right which is to be exercised at the option of the defendant"); see also Flores v. State , No. 04-15-00172-CR, 2015 WL 5838078, at *4 (Tex. App.-San Antonio Oct. 7, 2015, pet. ref'd) (mem. op., not designated for publication) (same).
Finally, even if Aguilar's gender-bias issue had been preserved, it lacks merit. The record does not establish that J.S. had a bias against men or in favor of women, or more specifically, a bias against the defendant, which would disqualify her from serving on the jury. See TEX. CODE CRIM. PROC. ANN . art. 35.16(a)(9) (West 2006) (biased or prejudiced juror is unfit to serve). In addition, the substance of Aguilar's argument in his brief does not match the gender-bias argument he made at trial (or listed in his points of error). Aguilar argues in his brief that J.S.'s Facebook posting constituted "an unauthorized conversation with someone outside of the jury" which entitles him to a new trial under TEX. R. APP. P . 21.3(f), not that it revealed a bias in favor of women, or against men or Aguilar. See TEX. R. APP. P . 21.3(f) (requiring a new trial in a criminal case upon the occurrence of certain events, including "when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case; or when a juror became so intoxicated that his or her vote was probably influenced as a result"). Aguilar never raised the issue of "outside communications" by J.S. at trial, only gender bias. See Rezac v. State , 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (nothing is preserved for review when the appellate issue does not match the trial objection). Finally, Aguilar asserts that when the trial court took over the questioning of J.S., it changed the scope of the inquiry from a gender bias "in favor of women," as Aguilar was claiming, to one "against men," and thereby prevented him from pursuing his issue. That claim is contradicted by the record which shows, as quoted above, that Aguilar's initial question concerned a possible bias by J.S. "for women against men." The court's questions to J.S. encompassed whether she had a bias "against men" or "against the defendant" as well as whether J.S. could judge the credibility of the witnesses *260 equally, regardless of "whether they were male or female, or the defendant or the victim." There was no disparity of any substance between the inquiries by counsel and the court.
Conclusion
Because Aguilar failed to preserve any error based on J.S.'s continued service as a juror, we overrule Aguilar's issues. Alternatively, we hold the record does not establish that J.S. had a gender bias which prevented her from serving as a juror.
INEFFECTIVE ASSISTANCE OF COUNSEL (FAILURE TO FILE MOTION TO QUASH INDICTMENT)
In his next four issues, Aguilar asserts his trial counsel was ineffective because he failed to file a motion to quash the indictment based on (i) double jeopardy because the predicate offenses of the continuous sexual abuse count overlap with the separate counts of indecency and constitute the "same offense," and (ii) the unconstitutionally vague nature of the continuous sexual abuse statute. The State responds that Aguilar cannot prove the prejudice prong of Strickland because a motion to quash on either of those two grounds would have failed on its merits. See Strickland v. Washington , 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (to establish ineffective assistance, appellant must prove trial counsel's performance was deficient and that it prejudiced his defense, in that there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different); Perez v. State , 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010) (failure to prove either prong of the Strickland test will defeat an ineffective assistance claim).
The indictment against Aguilar alleged as follows:
Count II (Continuous Sexual Abuse of Child): On or about November 17, 2007 through June 17, 2013 , during a period that was 30 days or more in duration, Aguilar committed two or more acts of sexual abuse against a child or children younger than 14 years of age:
• Indecency with a Child by intentionally or knowingly engaging in sexual contact with "Sonia" by touching a part of the genitals of "Sonia" with his hand, with intent to arouse or gratify the sexual desire of any person, including the defendant; AND/OR
• Indecency with a Child by intentionally or knowingly engaging in sexual contact with "Sonia" by causing a part of his genitals to contact a part of the genitals of "Sonia," with intent to arouse or gratify the sexual desire of any person, including the defendant; AND/OR
• Indecency with a Child by intentionally or knowingly engaging in sexual contact with "Sonia" by causing a part of his genitals to contact "Sonia's" hand, with intent to arouse or gratify the sexual desire of any person, including the defendant; AND/OR
• Indecency with a Child by intentionally or knowingly engaging in sexual contact with "Teresa" by touching a part of the genitals of "Teresa" with his hand, with intent to arouse or gratify the sexual desire of any person, including the defendant; AND/OR
• Indecency with a Child by intentionally or knowingly engaging in sexual contact with "Teresa" by causing a part of his genitals to contact a part of the genitals of "Teresa" with his hand, with intent to arouse or gratify *261 the sexual desire of any person, including the defendant; AND/OR
• Indecency with a Child by intentionally or knowingly engaging in sexual contact with "Teresa" by causing a part of his genitals to contact the thigh(s) of "Teresa," with intent to arouse or gratify the sexual desire of any person, including the defendant[;]
Count III (Indecency by Sexual Contact-Child): On or about April 24, 2014 , Aguilar intentionally or knowingly engaged in sexual contact with "Sonia," a child younger than 17 years of age, by touching her breast, with the intent to arouse or gratify the sexual desire of any person, including the defendant;
Count IV (Indecency by Sexual Contact-Child): On or about April 24, 2014 , Aguilar intentionally or knowingly engaged in sexual contact with "Sonia," a child younger than 17 years of age, by causing a part of his genitals to contact a part of the genitals of "Sonia," with the intent to arouse or gratify the sexual desire of any person, including the defendant;
Count V (Indecency by Sexual Contact-Child): On or about April 24, 2014 , Aguilar intentionally or knowingly engaged in sexual contact with "Sonia," a child younger than 17 years of age, by causing a part of his genitals to contact the hand of "Sonia," with the intent to arouse or gratify the sexual desire of any person, including the defendant.
Double Jeopardy
Aguilar asserts his counsel was ineffective for failing to file a motion to quash based on a double jeopardy violation. Aguilar argues that the indictment violates the state and federal constitutional prohibition against double jeopardy because the indecency by contact offenses charged in Counts III, IV, and V are "the same offenses" as the predicate offenses underlying Count II alleging continuous sexual abuse. TEX. CONST . art. I, § 14 ; U.S. CONST . amends. V, XIV. The Double Jeopardy Clause protects a defendant from being punished more than once for the same offense in a single prosecution. Gonzales v. State , 304 S.W.3d 838, 845 (Tex. Crim. App. 2010). "In the multiple punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included offense, or if the two offenses are defined under distinct statutory provisions but the Legislature has made it clear that only one punishment is intended." Littrell v. State , 271 S.W.3d 273, 275-76 (Tex. Crim. App. 2008). "Sameness in this context is a matter of legislative intent." Id. at 276.
The Texas statute prohibiting continuous sexual abuse of a child defines the offense as the commission of two or more acts of sexual abuse against a child younger than 14 years of age during a period of 30 days or longer, regardless of whether the acts of sexual abuse are committed against one or more victims. TEX. PENAL CODE ANN . § 21.02(b) (West Supp. 2016). Subsection (c) lists the predicate offenses that constitute an "act of sexual abuse" under the statute. Id. § 21.02(c) (West Supp. 2016) (listing eight offenses, including indecency with a child); Price v. State , 434 S.W.3d 601, 606 (Tex. Crim. App. 2014). The Legislature addressed the double jeopardy implication of the statute by expressly providing that, in a single criminal prosecution, a defendant may not be convicted of both continuous sexual abuse and any predicate offense listed in subsection (c) when both involve the same victim, unless the predicate offense "occurred outside the period in which the [continuous sexual abuse] was committed." TEX. PENAL CODE ANN . § 21.02(e)(2) (West Supp. 2016) (emphasis added);
*262 Carmichael v. State , 505 S.W.3d 95, 100 (Tex. App.-San Antonio 2016, pet. ref'd). Thus, the Legislature expressed its intent that a defendant may be convicted of both continuous sexual abuse of a child and an independent offense listed as a predicate offense in section 21.02(c) against the same child as long as they did not occur within the same time frame. Carmichael , 505 S.W.3d at 100 ; Holton v. State , 487 S.W.3d 600, 614 (Tex. App.-El Paso 2015, no pet.).
Here, as set forth above, Count II of the indictment alleged continuous sexual abuse through multiple acts of indecency against "Sonia" and "Teresa" during the period spanning November 17, 2007 through June 17, 2013. Counts III, IV, and V separately alleged acts of indecency against "Sonia" occurring on or about April 24, 2014, a date outside the time period alleged in Count II. Therefore, the face of the indictment shows that the separate offenses alleged against Aguilar comply with the legislature's intent expressed in section 21.02(e)(2) to permit predicate offenses to be separately charged as long as they do not fall within the continuous sexual abuse time period. TEX. PENAL CODE ANN . § 21.02(e)(2). Thus, the continuous sexual abuse offense and the separate indecency offenses are not considered the "same" offense for purposes of double jeopardy and do not subject Aguilar to multiple punishments for the same conduct. See Carmichael , 505 S.W.3d at 100 ; Holton , 487 S.W.3d at 614.
Aguilar argues to the contrary, broadly asserting that once a time period is designated in a continuous sexual abuse count it includes, for purposes of double jeopardy, any offense committed against the child victim at "any time" antecedent to the date of the indictment. In support, Aguilar relies on the general principle that alleging an "on or about" date in an indictment permits the State to prove the offense through a different date as long as it is antecedent to presentment of the indictment and within the limitations period. See Sledge v. State, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). Aguilar contends that, when applied to a continuous sexual abuse case, the "on or about" principle precludes the State from separately charging a defendant with a predicate offense listed in section 21.02(c) that occurred at any time antecedent to the indictment, even if the alleged date falls outside the continuous sexual abuse time period. Under Aguilar's theory, once continuous sexual abuse of a child is charged, no predicate offense may ever be separately charged, even if its alleged date falls outside the continuous period, without creating a double jeopardy violation.
We recently addressed a similar double jeopardy argument in Dwyer v. State , No. 04-15-00805-CR, 532 S.W.3d 535, 2017 WL 3159468 (Tex. App.-San Antonio July 26, 2017, no pet. h.). In Dwyer , the defendant was charged with one count of continuous sexual abuse of a child and one count of aggravated sexual assault against the same child alleged to have occurred outside the continuous abuse period. Id. at 537-38, at *1. The continuous sexual abuse was based on the predicate offense of indecency by contact via Dwyer's hand touching the child's genitals at least twice, while the separate aggravated sexual assault was based on digital penetration of the child's sexual organ. Id. After he was convicted on both counts, Dwyer argued on appeal that "[t]he jury was improperly charged that it was not bound by the dates described in the indictment, [which] permitted them to base [Dwyer's] convictions for both aggravated sexual assault and continuous sexual abuse ... on a single instance of digital penetration and placed [him] in double jeopardy." Id. at 541, at *4 (emphasis added). As Aguilar does, Dwyer argued the double jeopardy violation was apparent on *263 the face of the record. Id. ; see Gonzalez v. State , 8 S.W.3d 640, 642-45 (Tex. Crim. App. 2000). We disagreed, reasoning that the plain language of section 21.02(e)(2) indicates that the Legislature did not intend for continuous sexual abuse of a child and a predicate offense listed in section 21.02(c) to be the "same offense" if the separately alleged predicate offense occurred outside the period in which the continuous sexual abuse allegedly occurred. Id. at 542-43, at *5 (quoting the language of section 21.02(e)(2) of the Penal Code ). We then applied the plain statutory language of section 21.02(e)(2) to the offense dates alleged in the indictment and concluded that because the separate offense of aggravated sexual assault was alleged to have occurred outside the period of continuous sexual abuse, there was no double jeopardy violation apparent on the face of the record. Id. at 542-43, at *5 (citing Carmichael , 505 S.W.3d at 100-01 ). In a post-submission letter, Aguilar argues Dwyer is distinguishable and not controlling because the double jeopardy argument there was raised for the first time on appeal, and he raised it in a motion for new trial. That procedural distinction does not affect the substantive double jeopardy analysis.
Here, the separate indecency offenses in Counts III, IV, and V were alleged to have occurred "on or about April 24, 2014," which is after the November 17, 2007-June 17, 2013 period specified in the continuous sexual abuse count, but, by necessity, anterior to presentment of the indictment. Aguilar's theory that no offense listed as a predicate offense for continuous sexual abuse could ever be separately charged contradicts the Legislature's expressed intent with regard to the "sameness" of the offenses, and would render section 21.02(e)(2) meaningless. Applying the presumption that the Legislature did not act unreasonably or arbitrarily in enacting the statute, until proven otherwise, we reject Aguilar's argument as leading to an absurd result. See Peraza v. State , 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). We conclude that, on the face of the indictment, the independent indecency offenses alleged in Counts III, IV, and V are not the "same offense" as the continuous sexual abuse offense for purposes of double jeopardy, and Aguilar may be convicted and punished for each count in a single prosecution. TEX. PENAL CODE ANN . § 21.02(e)(2) ; see Dwyer , 532 S.W.3d at 542-43, 2017 WL 3159468 at *5 ; Carmichael , 505 S.W.3d at 100 ; see also Holton , 487 S.W.3d at 614.
Statute Void for Vagueness
Aguilar also argues his trial counsel was ineffective because he did not file a motion to quash, asserting that the continuous sexual abuse of a child statute is unduly vague because it deprives the defendant of adequate notice of the charged offense in violation of the due process clause under the state and federal constitutions. TEX. CONST . art. I, § 10 ; U.S. CONST . amends V, VI. A statute is void for vagueness if it (1) fails to give a person of ordinary intelligence fair notice of the prohibited conduct, or (2) is so indefinite that it encourages arbitrary and discriminatory enforcement. Kolender v. Lawson , 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). We must apply a strong presumption that the statute is constitutional, and in the absence of evidence to the contrary, we have a duty to construe the statute in a way which renders it constitutional. Rodriguez v. State , 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The burden rests with the person challenging the statute to establish its unconstitutionality. Peraza , 467 S.W.3d at 514 ; McMillian v. State , 388 S.W.3d 866, 871 (Tex. App.-Houston [14th Dist.] 2012, no pet.).
*264 In his appellant's brief, Aguilar did not specify the manner in which he claims the statute is unduly vague, arguing only that it failed to provide him with adequate notice of "what he must be prepared to meet," and citing only Russell v. United States , 369 U.S. 749, 764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). An appellant's brief is required to present a substantive argument for each legal issue raised, with appropriate citations to authorities and to the record. See TEX. R. APP. P . 38.1(i). At oral argument, Aguilar argued that the statute is unconstitutionally vague as applied to him because it permits a continuous sexual abuse conviction to be based on two or more predicate acts committed at any time during the alleged continuous abuse period, and therefore does not provide sufficient notice to permit an effective alibi defense. Aguilar asserted that, because the child victims did not testify to specific dates of sexual abuse during the alleged continuous abuse period, and the statute permits that, he was precluded from proving his alibi defense that he was away working in the oilfield on the alleged dates of abuse. Aguilar did not raise this vagueness argument in his brief. Further, Aguilar has not cited us to any such alibi evidence in the record. We conclude that Aguilar has failed to meet his burden to establish that the statute is unconstitutionally vague as applied to him.[1]
Conclusion
Because Aguilar has not shown that he would have prevailed on the merits of either ground of a motion to quash the indictment if his trial counsel had filed one, he has failed to establish that he was prejudiced by his counsel's omission and his ineffective assistance claim fails. Perez , 310 S.W.3d at 893 ; Strickland , 466 U.S. at 687, 104 S.Ct. 2052. We therefore overrule his issues on ineffective assistance of counsel.
NO HEARING ON MOTION FOR NEW TRIAL
Finally, in his last two issues, Aguilar argues the trial court abused its discretion in failing to hold an evidentiary hearing on his motion for new trial. Aguilar asserts he was entitled to a hearing because the motion's allegation of ineffective assistance raised "disputed facts" and was verified by trial counsel.[2] See Reyes v. State , 849 S.W.2d 812, 816 (Tex. Crim. App. 1993) (holding that "when an accused presents a motion for new trial raising matters not determinable from the record, upon which the accused could be entitled to relief, the trial judge abuses his discretion in failing to hold a hearing"). The State replies that Aguilar failed to preserve this issue because he did not timely present the motion for new trial to the trial judge. Alternatively, the State asserts the motion did not raise any fact issues that could not be resolved by reference to the record, i.e., no disputed facts.
Failure to Present Motion
The right to a hearing on a motion for new trial is not absolute. Rozell v. State , 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). Aguilar bore the burden to present his motion for new trial to the trial court within ten days of its filing. See TEX. R. APP. P . 21.6. "The defendant must put the trial judge on actual notice that he *265 desires the judge to take some action, such as making a ruling or holding a hearing, on his motion for new trial." Gardner v. State , 306 S.W.3d 274, 305 (Tex. Crim. App. 2009) ; Stokes v. State , 277 S.W.3d 20, 21 (Tex. Crim. App. 2009) (purpose of presentment rule is to provide trial court with actual notice). In addition, the presentment must be apparent from the record. Gardner , 306 S.W.3d at 305. Presentment may be shown by "such proof as the judge's signature or notation on the motion or proposed order, or an entry on the docket sheet showing presentment or setting a hearing date." Id. As the court explained in Gardner , Rule 21.6 does not require a personal visit to the trial judge, but it does require "some documentary evidence or notation that the trial judge personally received a copy of the motion and could therefore decide whether to set a hearing or otherwise rule upon it." Id. Without any documentary proof that the trial judge personally saw the motion for new trial, the judge cannot be faulted for failing to hold a hearing on the motion. Id.
Aguilar's motion for new trial was file-stamped on June 1, 2016. The original clerk's record does not reflect that Aguilar presented his motion for new trial to the trial judge within the required ten-day period, i.e., on or before June 11, 2016. The motion itself contains no signature or notation by the Honorable Judge Oscar J. Hale, Jr. indicating he saw the motion. The docket sheet contains no entry showing that the motion for new trial was presented to the trial judge. The motion for new trial contained a blank "Order Setting Hearing Date," but that does not suffice as a request for a hearing on the motion. See ids="7324231" index="48" url="https://cite.case.law/sw3d/306/274/#p305">id. at 306. Further, Aguilar did not file a separate motion requesting a hearing on the motion for new trial.
In response to the State's argument that he failed to present the motion for new trial to the trial court, Aguilar filed a supplemental clerk's record containing a copy of the motion for new trial that shows the name "Associate Judge Melissa Joy Garcia" written on the first page of the motion alongside the handwritten date "June 1, 2016." Aguilar argues that notation establishes that he timely presented his motion for new trial to the trial court because he presented it to the judge who was presiding in court on the day the motion was filed. However, the motion for new trial must be presented to the trial judge who tried the case. The Honorable Oscar J. Hale, Jr. presided over Aguilar's trial. Presentment to Associate Judge Garcia, who conducted only the jury selection phase, is not sufficient. See Gardner , 306 S.W.3d at 305 (trial judge must personally see the motion for new trial); see also TEX. GOV'T CODE ANN . § 54A.006 (West 2013) (associate judge has no power to preside over a trial on the merits or to hear a motion for new trial). Neither the original clerk's record nor the supplemental clerk's record indicates that Judge Hale was put on actual and timely notice that Aguilar desired a hearing or a ruling on his motion for new trial.[3]
Aguilar also argues that an entry on the trial court's docket sheet contained in the supplemental clerk's record is sufficient proof of presentment. It shows that the motion for new trial was filed on June 1, 2016 and "sent to court coordinator." Aguilar *266 asserts that this entry shows the motion for new trial was presented to the trial court's coordinator and is sufficient to satisfy Rule 21.6. Courts have recognized the impracticality in urban areas of requiring defense counsel to track down the trial judge, physically present the motion to the judge, and obtain the judge's signature as proof of presentment. These courts, including ours, have held that physical presentment of the motion for new trial to the trial court coordinator satisfies the requirement of giving actual notice to the trial court. See, e.g., Butler v. State , 6 S.W.3d 636, 641 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd) (holding that presentation of the motion to the court coordinator, who serves as the trial court's agent in scheduling and monitoring the court's caseload, satisfied the presentment requirement of giving actual notice to the trial court); see also Estrella v. State , 82 S.W.3d 483, 485-86 (Tex. App.-San Antonio 2002, pet. dismissed) (same). However, the presentment facts in those cases are distinguishable from the instant case. In Butler , the defendant's attorney personally informed the trial court coordinator of the filing of the motion for new trial, requested a hearing date, and obtained a setting within the ten-day presentment period. Butler , 6 S.W.3d at 638. Similarly, in Estrella , defense counsel personally presented the motion for new trial to the court coordinator ten days after it was filed, and the court coordinator filled out and signed a case setting form and set a hearing date. Estrella , 82 S.W.3d at 486. Here, there is no evidence that the court coordinator was personally presented with or informed of the motion for new trial within the ten-day period, or that a hearing date was requested from the court coordinator. "Presentment requires a defendant to go beyond simply filing the motion for new trial with the clerk of the trial court." Butler , 6 S.W.3d at 639.
Conclusion
Based on Aguilar's failure to timely present his motion for new trial to the trial judge who presided over his trial, he has failed to establish that the trial court abused its discretion in permitting the motion for new trial to be overruled by operation of law without a hearing. See TEX. R. APP. P . 21.8(c) ; see also Gardner , 306 S.W.3d at 306 ; Stokes , 277 S.W.3d at 21. Aguilar's last two issues are overruled.
CONCLUSION
Based on the foregoing analysis, we affirm the trial court's judgments.

To the extent Aguilar raises a facial vagueness challenge to section 21.02 based on this same argument concerning the lack of specific dates for the continuous sexual abuse, we conclude that he failed to prove that ground would have been successful in a motion to quash the indictment.

The affidavit by Aguilar's trial counsel is merely a verification that the facts stated in the motion for new trial are "true." The affidavit adds no detail or substance concerning the matters raised in the motion for new trial.

Aguilar also filed an unsworn "Offer of Proof for the Motion for New Trial" in which his appellate counsel states that he traveled from San Antonio to Laredo on June 30, 2016 to visit with Judge Hale about setting a hearing date on the motion for new trial. However, June 30, 2016 falls well outside the ten-day period for presentment of the motion and there is no notation by Judge Hale showing he had actual knowledge of the motion for new trial. See Tex. R. App. P . 21.6.